May it please the court, Philip Scarborough of Covington and Burling for the appellant Curtis Thompson. Before you start and before we start your clock we want to say how much we appreciate pro bono counsel. It's very helpful to the court so. Thank you your honor. With the court's permission I'd also like to reserve five minutes of my time and I'll keep an eye on that as we go along. You may do that. There are two main sets of issues that I'd like to discuss today. The first relates to the district court's pretrial rulings that dismissed several of Mr. Thompson's claims. The standard and the context that we're looking at here is that Mr. Thompson throughout the entire proceedings at the district court was proceeding pro se. He was representing himself and so that gives him a very liberal standard and this court that not only is this federal rule civil procedure 8 give a very liberal standard but but in addition to that Mr. Thompson was proceeding pro se and so there are four specific claims that I submit were dismissed and should not have been particularly in light of the the amendment standard that is given to to pro se litigants. I'd like to address two of those claims and then unless the court has questions about the remaining two I will submit on the briefs with respect to those. The two that I'd like to address are the deliberate indifference to medical needs and then the first amendment retaliation claim. With respect to the deliberate indifference claim it's important to take a look at the process that happened and perhaps it's understandable that at a certain point the district court began to get a little frustrated with the multiple amendments that had happened. There were four complaints that were submitted by Mr. Thompson. In the first complaint he's already alleging his medical indifference claim. He's granted leave to amend and then the first amended complaint the first amended complaint is submitted and he gives more detail about that and then he's granted leave to amend again and then in the second amended complaint by the time the district judge gets to that complaint he doesn't actually go and address any of the the allegations that are specific to that complaint. He simply says you haven't identified a proper defendant you have an alleged causation and I think if you look at the the allegations in that second amended complaint and then re-alleged in the third amended complaint that those allegations in fact did identify to the extent that he was able to identify the people who were responsible for the for the medical indifference claim. So but where does that third amended complaint is that the operative complaint for purposes of this motion? I think the I think the court can look to both the second amended complaint and the third amended complaint there's the Lacey decision from about I think two years ago where the court said that that that litigants don't need to replead if a claim is dismissed with prejudice. Now Mr. Thompson did take the opportunity to replead but you know particularly in light of his pro se status I think it would be appropriate to look to the second amended complaint and of the third amended complaint. On the medical needs would you what what additional I'm looking for third amended at the moment but what did the second amended add on the medical deliberate indifference claim if anything different? Certainly so the second amended the the one thing that that was mentioned in the second amended complaint that I think provides some additional information is he said that he had sent medical kites and grievances to the to the administration and that nothing had happened and so just quoting this is the ER 278 I've sent many medical kites and grievances since then since 2006 without any success and suffer from these problems on a daily basis so so I think that that that's an important factor for the court to look at as well he alleged that he had been sending these medical kites which which is a request for medical treatment to the to the prison administration. Is that sufficient that he's requesting medical care and not indifference? I think take I mean if he just says I'm requesting medical care and he's not receiving it then then I don't think that that would be enough but he's he's he's alleged more than that. What is he alleged more than that that you think it changes the outcome here? Certainly he alleged that he's was suffering on a daily basis that it was very painful for him he alleged that it would be. Does he say very painful? Yes I believe that he does. I say he suffered on a daily basis. He says that he suffered on a daily basis. From these problems? Yes. What else is there anything else that I want I just want to give you every opportunity so. Certainly and then he also says that that he suffers from these problems on a daily basis due to open sores on on head and backside and nails peeling up from my fingers and toes so he's alleging that his fingernails and his toenails are falling off and that and that he's suffering on a daily basis from open sores on his head and backside. Now in addition to that there also has to be some subjective recklessness under the case law and I think that that's also alleged in again taking account that Mr. Thompson is a pro se litigant he alleged that that these treat these problems could be treated with a simple antibiotic or or by medicine that it's a fairly simple treatment and it's causing these problems that are causing him to suffer on a daily on a daily basis and and and they'd never follow it up on it and all of those allegations. May I, Judge Noonan, he did not allege that John Doe was doing this. There's no specific medical staff that know John Doe, right? I'm sorry Judge Noonan I wasn't wasn't able to understand. Is your question whether there are no John Doe alleged by this person, right? No with respect to the medical indifference claim he did in fact allege that there were John Doe defendants. Did he? Yes he did. He named one person by name B. Sanders I think it was and then John Doe's in addition. Yes so so there were in addition to Mr. I don't know if it's Mr. or Ms. Sanders he also named the John Doe's. So so I think that does that answer your question Judge Noonan? Yes it does. I'm just taking the record. Okay. So unless there are well there's one other point that I would like to address with respect to that claim and that is in the Appley's brief they have this suggestion that the that claim was somehow revived in 2010 and they point to a to an order from the magistrate judge referring the case to the district court's pro bono program and again if you look at the record I don't think that that order can be fairly interpreted as reviving a claim that had been dismissed in 2009 and then if you also look at the order at page 208 of the excerpts where Mr. Thompson had substituted one of the other John Doe's with one of respect to the claims that did go to trial the district court specifically said no further amendments will be allowed. So so it wasn't possible in 2010 despite that order that that I admit is a little ambiguous as to which claims are going forward it wouldn't I don't think it's fair to expect Mr. Thompson a pro se litigant to interpret that order as reviving claims that he'd been told he couldn't amend anymore. So unless there are further questions with respect to that claim I'll move on to the second claim that I'd like to address during today's argument which is the First Amendment retaliation claim. The First Amendment retaliation claim was dismissed for two reasons I'd like to address the alternative reason first which was that Mr. Thompson failed to exhaust administrative remedies and if you take a look at the court's decision just this summer in Albino this was the subject of the rule 28 J letter that I submitted I think that that pretty clearly shows that that that this administrative remedies basis was not a clear in that case that it's the defendant's burden to plead and prove the lack of exhaustion and there simply wasn't any evidence in this record on that so that takes care of that particular alternative ruling. Then with respect to the rest of the allegations again if you look at the complaint the Third Amendment complaint and and also I would submit the Second Amendment complaint both of those complaints he's alleging that there was adverse actions such as having property taken from him he he directly alleges causation and he directly in the Third Amendment complaint he says that it had a chilling effect on him and so again I think I think I looked for that could you help me find the chilling effect language in the Third Amendment complaint? Do you have the page? Sure that's it excerpts of record 270 to 271. Okay thank you and does he allege that there was not a legitimate reason a legitimate correctional reason? He doesn't use that specific language your honor but again taking into account the liberal pleading standard for a pro se litigant he he says that no reason was given for the actions that were taken he it's difficult to imagine as well some of the things that he's alleging destruction of legal materials that he held in his cell it's difficult to imagine what the legitimate penal logical penalogical purpose would have been for that type of action as well so again taking into account that this is a pro se litigant he doesn't evoke the magic words but but I think that it's fairly implied in what he did allege. All right unless there are further questions from the court with respect to that claim or with respect to the other two claims then then I'd like to move on and touch on the evidentiary issues. You're down to five so I'm gonna use your time as you can. I'm gonna use two more minutes. So with respect to the evidentiary errors there are two main types and again taking into account the pro se status of Mr. Thompson and looking at the types of things that were allowed to go into the record. Some of which he put into the record. Some of which he he did put in. Former trial court judge it seemed to me that the judge was trying to help him and open the door in a big way counsel so if I know your time is ticking so that's my problem I want to give you a And I acknowledge that this record is that there are some significant hurdles with respect to this argument. There are a couple of different types of there are a couple of different types of open the door arguments that counsel makes. One of them has to do with exhibits that were stipulated into into the record. Now with respect to those I would submit that a lot of that evidence was going to come in anyway. The fact that he was convicted those types of things were going to come in anyway and and so the fact that he stipulated that less prejudicial types of evidence the evidence that that's a piece of paper instead of a live police officer testifying about the types of crimes that he committed I think is is is one way to get around that. And and so that's that's a distinction that I would make. A second point that I would make is again taking a look at the way all of this came into the record. At one point during the proceedings the trial judge when Mr. Thompson attempted to submit attempted to refer to some other evidence that he wanted to put into the record that the judge had excluded during the motion to eliminate phase the trial judge warned him that if he violated the court's orders then he was going to dismiss the case. And so to a pro se litigant that's a pretty serious charge and and you could see as you read the transcript that it had an effect on Mr. Thompson. So so so I think it might be understandable that as the the evidence starts to come in and Mr. Thompson had objected with the motion to eliminate he objected a few more times and then the judge overruled those objections and so it might be understandable why Mr. Thompson would start to ask about some some very specific instances that occurred. But counsel some of this was going to come in in no matter what right as you as you've indicated and some of it was going to come in because it went to the defendant's reasonable beliefs as they were interacting with your client right? So how can we find that given that that that was going to be in front of the you know sort of a body of a number of bits of evidence and pieces from the transcript how can we find that this was prejudicial? That this made any difference? So I think with respect to I'm going to take the second part of that question first the the Rubel-Kaba issue relating to what was reasonable under the circumstances the distinction that we would make is that in Rubel-Kaba the officers were allowed to testify as to their in a limited manner that's what the court said in a limited manner and they were allowed to do so with respect to their own interactions with the the plaintiff in that case and in this case we had I mean basically rank hearsay coming in where they said I had heard that he had done this. These officers testified it was permissible for them to say and indeed Mr. Thompson stipulated to the admission for example of the document the security alert document as it was permissible for them to say that there was a security alert out there we knew that that we had to take extra measures. But they went too far is your position? They went too far, yes. Thank you. So unless the court has further questions I'll reserve the remainder of my time. You may do that. May it please the court, counsel. I'm John Zeldinrust. I represent the jail defendants in this case. I want to begin by making just a couple of points about both of the primary issues in this case. The first being the evidence issues. Nowhere in this record are you going to find extrinsic evidence admitted under ER 609A of what Mr. Thompson was convicted of in his 13 to 14 conviction counts in three separate trials. But there was certainly evidence that came in that was quite exceptional. Are you going to argue that there was none that all this evidence was properly admitted? I'm gonna what I'm just trying to make the point here, Your Honor, is that in the balancing process that the court engaged in, the court excluded any testimony from the prosecutor concerning what Mr. Thompson had been convicted of. Well I appreciate that, but of course the counsel's here to argue about what got in, not what was kept out. I understand, Your Honor, and I'll move on. The only point I was just trying to make is that when we're considering, you know, whether the judge correctly exercised his discretion under ER 403, I think we have to look at what he kept out as well as what he went in. Fair enough. So, and I mean, these charges were very, very damaging. I mean, the convictions were burglary, robbery, assault, indecent liberties, unlawful imprisonment, murder, rape. So what about the evidence that the jury heard, that the jury shouldn't have heard? What do you think is the most damaging? Well, I think, personally, when I looked at this whole record, I looked at the stuff that came in, the ruble cava, some of the ruble cava evidence. I think the jury's testimony was a bit on the graphic side. However, a couple points I think that need to be made on that. One is the judge did properly say in the beginning of the case that to the extent these officers knew of the prior conduct at the time of their interaction with Mr. Thompson, they can testify as to what they knew. That was a general ruling, pretrial ruling, that was not an abuse of discretion. It's consistent with the law. And the judge also said, and if Mr. Thompson takes the stand and testifies, he may be subject to further impeachment through his criminal convictions, which was not allowed, by the way, by and large. So some of that testimony came in. A couple things, too, I think that we need to look at when we look at that specific testimony, as Sergeant Taylor is. One, there was no objection made to the testimony. Now, I realize that Mr. Thompson is pro se, but also you have to look at the record, at supplemental excerpt of a record, I think it's 154 and 155, where the judge on two separate occasions advised him, you need to object to these questions. If you disagree with something I'm asking or a question that's being asked, you need to object and I'll rule on it. And then he advised him the same thing again. So Mr. Thompson did not object. There's no question that this is actually what Sergeant Taylor knew. This is what Sergeant Taylor knew about him prior to the incident. He did not object. And I think that when you look at the other evidence that came in, the cumulative effect of the evidence that properly came in certainly kind of washes that out. When you look at the testimony of Prosecutor O'Toole and the cross-examination by Mr. Thompson, I think it's in the record there. There's about 20 pages of cross-examination where there's an extensively detailed stuff that came in that I think if there was any error in Sergeant Taylor's testimony, I think it was wiped out by the prejudicial effect of what Mr. Thompson brought in himself. I just have one more question. This area of the appeal and that is, can you tell me at what point the corrective instruction was given? Which instruction, Your Honor? I think the judge gave an instruction to the jury to disregard certain evidence, but I'm not sure at what point that was given. Oh, you mean his curative instruction, basically. Yeah, I do know where that is, and let me see if I can find it here real quick. Well, I don't want to take a lot of your time. I think it's ER 171, but again, I may not be remembering that correctly. You know what? I don't want to take your time. I'll find it. I've got law clerks that can help me find it. I just couldn't find it this morning, so no worries. Yes, the judge is correct. It is ER 171 where the judge gave his curative instruction and also indicated on the record that he was conducting the ER 403 balancing of the evidence as it came in. What about the deliberate indifference claim, please? The deliberate indifference claim, as counsel noted correctly, was pled about three or four times. He first pled it in July of 2008 in his first complaint. On August 14th, the court issued an order saying, you haven't adequately pled this claim. You need to specifically identify the individuals who you believe were responsible for causing the constitutional violations or to some extent that you allege. So the third amended complaint says, quote, these are the defendants as well as I know them now until further discovery. And I think he got around to naming one, right, as Judge Draper indicated. Yes. Okay, so what's wrong with that? Okay, what's wrong with that is, first of all, I mean, just for the record, he did not have the authorization in the January 15th, 2009 complaint to plead deliberate indifference. The district court had restricted that in his December 15th, 2008 order and said, no further amendments. What you have the right to do in your third amended complaint is allege the two assaults and allege the four names of the officers who you claim did it. Let's assume we disagree with you about that. What is insufficient about the pleading on the deliberate indifference claim where he now names a specific individual, describes his physical condition that wasn't treated, and says he asked for treatment and didn't get it? Well, I think... I think what he needs to do, Your Honor, and what the court told him that he needed to do in a number of locations prior to that, is he needs to identify the person and explain how they were personally involved in the conduct that he complains about. And that's required to state a deliberate indifference claim. You can't just identify the medical director, which Benjamin Sanders is. He's the medical director for the jail health services. You have to explain... Why can't he? Because the problem here, if he was seen by Dr. Smith and Nurse Jones, he can say, Smith and Jones did a terrible job. But his problem here is that he wasn't seen. He asked. And so why wouldn't the medical director be the responsible person since he never got to see anyone? Do you understand what I'm saying? It's a sin of omission here. And why wouldn't the medical director be the responsible party? Well, I think that what he has to allege is, first of all, I do not believe you can simply name the head of an agency and say, that is the person who was personally involved in the denial of my client's agency. He's really not in a position to know who should have seen him. And the problem is, nobody saw him, as Judge Graper suggests. So I have the same problem she's got. So could you address that? Okay. Well, I guess the thing that we have to look at is, he needs to... He claims that he had submitted kites, he had done these things, and he had names on his kites and so forth, but he didn't have the ability or wasn't able to read it or something else. Mr. Thompson had been in the jail for four and a half years by the time he filed this complaint. And for him to claim that he has no idea who these people were, who were seeing him and treating him and who were not... But they weren't treating him. That's the problem. His claim is, I asked to be seen and no one would see me. Now, if that is your claim, are you supposed to list every employee who didn't see you? Or are you supposed to list the person who you think is in charge of scheduling one of those many people? I think you have to list... You have to, with some particularity, state who it was that denied you medical care. Well, he may be wrong as an evidentiary matter, but he is alleging that the claims are not true, but I don't understand why that's insufficient as a pleading. Well, Your Honor, the only thing I can do is just look to the case law that talks about the deliberate indifference claims. Well, his claim is that B. Sanders is in charge. I mean, I'm putting this in different words, but as I read it, his claim is B. Sanders is in charge of the to be seen for the following conditions that are serious, and I don't think you've challenged that those could be serious medical needs, and nobody will see me. So, why isn't that... And so, you know, why can't you infer that that is deliberately indifferent to his needs if he has been asking? Well, I think that, you know, I mean, on the one hand, I mean, if you want to just try to state a malpractice type of a claim under state law that it wasn't adequately treated in the facility, that might be one thing, but to state a constitutional claim under Section 1983, he does have to name the individual, and the individual does have to have some personal responsibility, and that wasn't shown here. He's got to show deliberate indifference as well. The individual has personal responsibility to some extent. This is the medical director, right? You're not denying this is the medical director? No, this is the medical director, but there's no evidence that he had any involvement. Okay, are you denying that he had knowledge? Are you denying that he had knowledge of this claim, of the request for medical care? There's no evidence he had any knowledge of this claim. Why are you talking about evidence? This was dismissed on the pleadings. So, I mean, it may be correct that no evidence will bear out this claim, but just strictly as a matter of pleading, when you say, I take your position not to be that these aren't serious medical needs. It's not like he says, you know, my left about something serious, and he says, I asked repeatedly to be seen for this condition. So and so's in charge. They won't see me. I think he has to state who he asked. Okay, so in addition to that, could I just ask you to clarify, is Judge Graber correct that you're not taking the position, or you're not disputing that this was a serious medical condition? Your Honor, based upon what he says, there's no, I mean, he's alleging That's all this is about, because it's a complaint. He's making an allegation. But he can't say in a complaint, I complained that I had a, I sent in a kite that I had a hangnail and nobody treated me, and get a constitutional claim out of that. It has to be a serious medical condition. So that's why we're not glossing over that. I want to be sure you're not contesting that. Well, I don't know. In terms of pleadings, I suppose if Mr. Thompson was correct that he had MRSA, that would be a serious health condition. Well, that's what he's alleging. And we don't know if he did or he didn't. We don't know if he did or he didn't. But that's what a trial is for, usually. I think that the point, Your Honor, that I would want to just make is that I think under the constitutional standard of deliberate indifference, he does have to name who denied him the treatment. So if somebody was, he kited it, nobody came, he has to say, nurse so-and-so blew me off, wouldn't give me any stuff. He didn't get that far. We don't know that, Your Honor. Well, he's pleading that. Could I ask you to address the First Amendment claim that opposing counsel is focusing on, just so you have an opportunity to talk about that, the retaliation claim? Oh, yeah, First Amendment retaliation. Yeah, just real quickly, that claim, again, he was not authorized to plead it in his Third Amendment complaint, but he did anyway after two amendments. He does not, he does not allege the absence of a legitimate correctional purpose in his pleadings. And the evidence is, on its face, substantially shows a legitimate correctional purpose. He had been in two fights in December of 2007 and March of 2008. That's why he was placed in segregation. He does not allege that his placement in segregation had no legitimate correctional purpose. Okay, so he doesn't have to use the magic buzzwords. He says no reason was given. But your response, I take it, is that on its face, a reason was given, at least impliedly, that this is in response to his own conduct. Is that a fair summary? Yeah, I think there certainly was a reason given. And I do think also that it is a very specific pleading requirement, that he does have to say there isn't any legitimate correctional purpose for this. And another issue on that, Your Honors, is Mr. Thompson was proceeding in two separate civil cases at that time and filed 17 separate pleadings in this case and his 2064 case during that time. It's just not plausible that he was being meaningfully restricted from accessing the courts. He was an active litigant throughout that whole period of time. So unless the Court has further questions, I've got two minutes that counsel wants to use. I think he has two of his own. Thank you very much. And we will hear rebuttal. So I'd like to just pick up right where counsel left off. He made the point that it's not plausible that because he was accessing the courts that Mr. Thompson was being retaliated against for having his First Amendment rights chilled. And under the Rhodes decision, I think that all he has to do is allege that there was a chilling effect. The fact that he was able to overcome the chilling effect and was able to proceed to the court and file a complaint, I don't think gets counsel anywhere. What about the legitimate correctional goal? He doesn't have to use, I'll grant you that, he doesn't have to use the magic buzzwords, but is opposing counsel correct that on the face of the complaint it's clear what the reason was? Certainly not on the face of the complaint, no. And the face of the complaint talks about assaults against Mr. Thompson. It doesn't talk about why Mr. Thompson might have been. But doesn't that tell us that there's a prison fight and this was in response to the prison fight? I realize that I'm summarizing, but that's how it reads to me, so why am I wrong? So I think, Your Honor, the way to look at that particular issue would be to, again, take a look at the types of allegations that he was making. The assaults that occurred were in 2007 and 2008. And then he says, from 2008 on, I've been in this segregated unit. I've had my legal materials ripped up. I've had my property taken. And those types of things, even if, assuming, again, that they're true, would not be advancing a, perhaps taking property could be some kind of Not unusual. Remember what we do for a living. We see these complaints and people get in prison fights, and it doesn't matter who started it, and we don't meddle with how wardens choose to run their prison in large measure in response to that kind of a disruption. So far what you're telling me, to be candid, does not sound unusual to me. So what am I missing? So then I would focus on the destruction of legal materials, and perhaps the legal materials can be taken away. Destruction as opposed to taking away, is that your point? Yes. Yes, that's what I would focus on. And I see that I'm out of time, and just very quickly, if the Court would indulge me for about 30 seconds. He mentioned the cumulative effect, and he pointed to Sergeant Taylor's testimony. Sergeant Taylor's testimony was far more explicit than anything that Mr. Thompson submitted. Sergeant Taylor talked about pouring bleach on a rape victim. He talked about Mr. Thompson killing someone with a hammer. And those types of things, I think everyone in this room understands that as soon as that testimony came in, the trial was basically over. Thank you, counsel. You're welcome. Again, we appreciate you taking on this case. We appreciate very much the helpful arguments from both counsel, and the case is submitted.
judges: NOONAN, GRABER, CHRISTEN